

**IDAHO ARMY NATIONAL GUARD**
4040 West Guard Street, Bldg. 600
Boise, Idaho 83705-5004

AAG IDARNG                                                    3 September 2024

MEMORANDUM FOR Record

SUBJECT:  Approval Authority Substituted Findings and Action Plan

1.  **Executive Summary**: In accordance with AR 15-6, para. 2-8(b)(3), I hereby make the following modified findings and recommendations to the report of inquiry prepared by the Investigating Officer in this matter.  I find that MAJ David Worley demonstrated counterproductive leadership in his time as the commander of D. Co., IDARNG Recruiting and Retention Battalion.  This behavior led to a negative leadership climate and reduced morale and the general welfare within his company.  MAJ Worley's behavior created conflict and showed little respect for others.  MAJ Worley's behavior eroded trust between himself and his subordinates and between himself and higher-level commanders.  Although MAJ Worley treated the Complainant differently than others in D. Co., I do not find that MAJ Worley's treatment of the Complainant rose to the level of discrimination, harassment, or hostile work environment.  I do not find MAJ Worley's pre-employment activities to be illegal and I find that they are irrelevant to this investigation.  I am specifically not considering MAJ Worley's pre-employment political campaigning activities, his documented religious beliefs, his activities in Virginia, or his activities in reference to the Pocatello library as the basis of any of my findings.  I direct that MAJ Worley be relieved from command given my loss of trust and confidence in his ability to command, that his One Time Occasional Tour be curtailed, and that he receive a General Officer Memorandum of Reprimand, with a filing decision to be determined at a later date at my discretion.

2.  **Background**:

    a.  On 5 July 2023, MAJ David Worley (Worley) was hired as the Idaho Army National Guard (IDARNG) Recruiting and Retention (RRB) commander for D. Company in Pocatello, Idaho.  On 17 July 2023, the complainant, ▆▆▆▆▆▆▆ (▆▆▆▆▆▆), filed an Equal Opportunity (EO) complaint using an NGB Form 333 alleging a hostile work environment due to discriminatory treatment based on his sexual orientation and that Worley had "alleged involvement with extremist/hate groups" prior to his employment with the IDARNG. ▆▆▆▆▆'s requested relief was that Worley be relieved from command and removed from the IDARNG.

    b.  On 20 July 2023, the IDNG SEEM, Mr. Al Gomez, referred the EO complaint to the IDARNG Assistant Adjutant General, BG Farin Schwartz, with a recommendation to conduct an investigation.  On 21 July 2023, LTC Alan Whitehead (Whitehead or the IO) was appointed as investigating officer to conduct an AR 15-6 investigation.

SUBJECT:  Approval Authority Substituted Findings and Action Plan

c.  Between 20 July 2023 and 22 September 2023, the parties engaged in alternative dispute resolution and ultimately came to terms to resolve this matter.  Worley, through his attorney of record, initiated the alternative dispute resolution process.  The parties signed a settlement agreement on 22 September 2023.  Pursuant to the settlement agreement: 1) ███████ would withdraw his EO complaint against Worley; 2) BG Schwartz would remove Worley as the subject of an investigation and rescope the investigation to address organizational issues within RRB; 3) Worley would, within 120 days, resign from the IDNG or transfer to the National Guard of another state, the US Army Reserve, or the Active Army and the IDNG would make every good-faith effort to assist in his transfer; 4) MAJ Worley would conduct himself with the highest standards during the 120-day period; and 5) the parties would not disparage each other, specifically that Worley would not "publish, post, or otherwise release any material in written or electronic format, make speeches, gain interviews, or make public statements that mention the IDARNG."

d.  On 26 September 2023 (four days after the parties signed the settlement agreement), Worley was unflagged.  On 25 September 2023, the IDARNG received an email from Worley's attorney instructing the agency to lift the flag by close of business on 26 September 2023.  The IDARNG met the deadline imposed by Worley's attorney.  On 29 September 2023, ███████ ratified the settlement agreement and withdrew his EO complaint against Worley, with the understanding that if Worley breached the settlement agreement, the investigation would be reinitiated.  On 29 September 2023, BG Schwartz reappointed the IO on a rescoped investigation without Worley being included.  On 6 October 2023, the first investigation was completed.

e.  On 22 January 2024, the agency received a demand letter from Worley's attorney signaling Worley's intent to breach the settlement agreement.  On 24 September 2024, the settlement agreement expired by its own terms after 120 days.  Worley breached the agreement by not resigning from the IDARNG or transferring to another state NG or component.  On 24 September 2024, ███████ refiled his EO complaint.

f.  On 1 February 2024, the IO was reappointed to investigate ███████'s EO complaint.  On 1 February 2024, I issued my "Commander's Reprisal Plan and Whistleblower Protection" memo.  I make it clear that "Soldiers have a right to present their complaint to their leaders or supervisors without fear of intimidation and harassment or reprisal." "Reprisal is any act of … interference … or coercion taken against an individual … for having filed a complaint of discrimination."

g.  On 3 May 2024, the IO completed his findings and recommendations.  Worley, through counsel, was afforded the opportunity to participate in the renewed investigation, and he submitted a written response to the IO, which was included in the case file.  After receiving a legal review, I referred the investigation to Worley in accordance with AR 15-6, para. 5-4 to prepare rebuttal materials for consideration prior to the investigation being finalized.   Along with my referral memo, I provided to Worley, through his counsel, a complete redacted copy of the IO's initial findings and recommendations and all evidence gathered by the IO.  My Commander's Reprisal Plan and Whistleblower Protection memo

SUBJECT:  Approval Authority Substituted Findings and Action Plan

was included as Exhibits 9 and 9A within the case file.  I granted Worley an extension based on technology issues.  Worley executed his due process rights and submitted his rebuttal matters on 12 August 2024.

h.  On 28 August 2024, the media outlet World Net Daily published an article entitled, "Holy War Erupts as National Guard Officer Booted from Command for Voicing Christian Beliefs."[1]  The article specifically references ██████'s EO complaint and contains direct quotes from ██████'s NGB Form 333.  This story was also carried by the American Family Association, the Christian Post, the Daily Fly, and the Liberty Council.  In addition, on 15 August 2024, the Liberty Council submitted a letter to Gov. Brad Little asking for his intervention into this ongoing investigation.

i.  This matter is now ripe for final review and action by the appointing authority in accordance with AR 15-6, para. 2-8.

3. **Legal Standards and Definitions**.

a.  <u>Actions by the Approval Authority.</u>  Upon receipt of a completed investigation, the approval authority will conduct a final review of the Investigating Officer's findings and recommendations and the legal review.  AR 15-6, para. 2-8(b)(1).  Unless otherwise prohibited by another regulation or directive, the approval authority is neither bound nor limited by the findings or recommendations of an Investigating Officer.  *Id.* at para. 2-8(b)(3)(a).  The approval authority may approve, disapprove, modify, or add to the findings and recommendations, consistent with the evidence included in the report of proceedings.  *Id.*  The approval authority may take action different than that recommended with regard to a respondent or other individual, unless the specific regulation or directive under which the investigation was appointed provides otherwise.  *Id.*  The approval authority may consider any relevant information in making a decision to take adverse action against an individual, even information the IO did not consider.  The approval authority will attach that information to the report of investigation, if available.  *Id.* at para. 2-8(b)(3)(b).

b.  <u>Evidentiary Standard.</u>  Findings must be supported by a preponderance of the evidence, that is, evidence which, after considering all of the evidence presented, points to a particular conclusion as being more credible and probable than any other conclusion.  *Id.* at paras. 3-10(b) and C-3(h).

c.  <u>Discrimination is Prohibited.</u>  No NG servicemember or civilian employee may unlawfully discriminate against, harass, intimidate, or threaten another person on the basis of race, color, national origin, religion, sex-gender, or sexual orientation.  CNGBI 9601.01,

---

[1] Holy war erupts as National Guard officer booted from command for voicing Christian beliefs * WorldNetDaily * by Bob Unruh (wnd.com)
AFA.net - Christian Officer Removed from Command
Christian infantry officer stripped of position: complaint | U.S. (christianpost.com)
Idaho Army National Guard Intolerant of Religious Speech – Dailyfly
www.lc.org/newsroom/details/240826-militarys-no-christian-commanders-policy-will-not-stand

SUBJECT:  Approval Authority Substituted Findings and Action Plan

para. 4(a).  *See also* AR 600-20, para. 4-12, (it is the policy of the United States Army to provide equal opportunity and fair treatment for all Soldiers without regard to race, color, sex (including gender identity), national origin, religion, or sexual orientation).

d.  Harassment.  Harassment is any unwelcome conduct that is based on race, color, religion, sex or sexual orientation, national origin, age, disability, or genetic information. Harassment becomes unlawful where enduring the offensive conduct becomes a condition of continued employment or the conduct is severe or pervasive enough to create a hostile work environment that a reasonable person would consider intimidating, hostile, or abusive.  *Id.* at Glossary, p. 2.

e.  Hostile Work Environment.  Hostile work environment consists of discriminatory conduct or behavior in the workplace that is unwelcome and offensive to an employee based on race, color, religion, sex or sexual orientation, national origin, age, disability, or genetic information.  The conduct must be pervasive and constitute a pattern rather than consist of one or two isolated incidents.  The pattern of behavior has to be of a degree severe enough to cause disruption beyond a reasonable degree in the work of the targeted employee.  *Id.* at Glossary pp. 1-2.

f.  Responsibilities of Command.  Commanders are responsible for establishing a positive leadership climate within the unit and for developing disciplined and cohesive units.  AR 600-20, para. 1-6(c).  Commanders will treat their subordinates with dignity and respect at all times.  *Id.*  Commanders must demonstrate exemplary conduct and are required to show a good example of virtue, honor, patriotism, and subordination; and to take all necessary and proper measures to promote and safeguard the morale, the physical well-being, and the general welfare of the Soldiers within their command or charge.  *Id.* at para. 1-6(c)(4)(d).  *See also* 10 USC 7233.

g.  Counterproductive Leadership.  Counterproductive leadership is demonstration of leader behaviors that violate one or more of the Army's core leader competencies or Army Values, preventing a climate conductive to mission accomplishment.  ADP 6-22, para. 8-46.  Counterproductive leadership can include behavior that creates conflict, is ridiculing, domineering, or shows little or no respect to others.  *Id.* at para. 8-49.

h.  Relief of Command.  When a higher ranking commander loses confidence in a subordinate commander's ability to command due to misconduct, poor judgment, inability to complete assigned duties, or for other similar reasons, the higher ranking commander has the authority to relieve the subordinate commander.  AR 600-20, para. 2-18.  A commander may be temporarily suspended from assigned duties pending completion of an AR 15-6 investigation.  *Id.*

4.  **Findings**.  Having considered the Report of Inquiry prepared by the IO, the rebuttal materials submitted by MAJ Worley, all relevant evidence in the case file, additional evidence that I have gathered, and my personal review, I hereby make the following substituted findings.

SUBJECT:  Approval Authority Substituted Findings and Action Plan



a.  I find that Worley's temporary suspension from assigned duties as the commander of D. Co., RRB was appropriate given the circumstances.  This is a routine action while an AR 15-6 investigation is pending against a commander.  BG Schwartz made an assessment of the situation and he determined that was the most appropriate course of action in this matter to preserve the welfare of the unit, protect any evidence that might exist, and allow D. Co. to continue its recruiting mission.  When I took command, I ratified BG Schwartz's temporary suspension of Worley.

b.  I find that Worley demonstrated counterproductive leadership toward ████.  Specifically, Worley socially ostracized █████, he sat next to █████ in a meeting and made no attempt to communicate with him, and he engaged with ████'s subordinates without engaging ████ as team leader. Exbibit 7A, Tab 6.1.  Worley knew that ████ was gay and had been on parental leave prior to 6 July 2023.  Worley made no effort to inquire about █████'s child, the welfare of his partner, and his readjustment to work following parental leave.  Worley sat right next to █████ during a meeting and made no effort to congratulate him following the arrival of his child.  Worley made no effort to understand █████'s situation on a human level.  Worley's behavior created a perception with █████ that he was being treated differently than the other E7s in D. Co.  Worley's treatment of █████ did not promote or safeguard █████'s morale and general welfare.  Worley's treatment also created conflict with █████ and demonstrated little respect toward him.

c.  I do not find that Worley's treatment of █████ constitutes unlawful discrimination based on █████'s sexual orientation.  While there is evidence that Worley knew █████ was gay prior to Worley's first interaction with him, there is no direct evidence (other than Worley's pre-employment activities, which I am not considering) that Worley treated █████ differently *because* he is gay.  This evidence does not support a finding of unlawful discrimination based on the standard set forth above.

d.  I not find that Worley's treatment of █████ created a discriminatory "hostile work environment" as set forth above.  While Worley's conduct was unwelcome and offensive to █████, there is not sufficient evidence that Worley's conduct was *because* of █████'s sexual orientation.  In addition, assuming that it was *because* of █████'s sexual orientation the conduct was not sufficiently severe or pervasive enough to constitute a hostile work environment.

e.  I do not find that Worley's treatment of █████ constitutes unlawful harassment *because* of █████'s sexual orientation.  There is no evidence that Worley's treatment of █████ became a condition of employment, or that Worley's treatment was either severe or pervasive enough to meet the threshold of the technical legal definition of discriminatory harassment.  A reasonable person could not conclude that Worley's treatment of █████ constituted harassment *because* of his sexual orientation.  The evidence does not meet the legal definition of discriminatory harassment set forth above.

f.  I find that Worley demonstrated counterproductive leadership toward other members of D. Co., RRB.  Worley's behavior created conflict in the unit, created a

SUBJECT:  Approval Authority Substituted Findings and Action Plan

negative leadership climate, and demonstrated little respect toward others.  I find that this behavior upset good order and discipline in D. Co. and jeopardized the recruiting mission in eastern Idaho.

(1)  Worley made it a point to ask his 1SG whether there are any transgender Soldiers in the unit.  1SG told Worley that ██████ was gay on 5 July.  Worley knew that fact prior to any interactions with ████.  Exhibit 7A, Tab 6.1.

(2)  Worley made comments to a group of Soldiers that females in the Army are the reason why the Army as adopted lower physical fitness and weight standards.  These comments made a female Soldier feel uncomfortable and singled out. Exbibit 7A, Tab. 6.1, p. 17; Exhibit 7A, Tab. 6.2.

(3)  Worley's behavior toward a female member made that member feel like she was being treated differently because she was female.  Exhibit 7A, Tab 6.2, p.4.

(4)  Worley was obsessed with talking politics in the military workplace, particularly his failed candidacy for mayor of Pocatello.  In addition, he told unit members that he blames the parent of a transgender student who works at the local school district for detailing his run for office. Exhibit 7A, Tab 6.1, pp. 13-15; Exhibit 7A, Tab 6.2, pp. 3-4.  Unit members found his discussions about politics in the workplace to be "unusual," and that there "was an agenda" to his discussions in the workplace.  Exhibit 7A, Tab 6.2, pp. 3-4.

(5)  Worley was not a team player within D Co.  Exhibit 7A, Tab 6.2, p. 5.  He wanted to "push the envelope on a lot of things," which made unit members uncomfortable since much of their success in the community was the result of long-standing relationships with community partners, which Worley wanted to disrupt.  *Id.*

(6)  Within two weeks from the time Worley took command, "he immediately drove a toxic wedge in D Co. RRB."  Exhibit 7B.

(7)  When approached by the unit 1SG about the EO complaint, Worley said that the Idaho RRB is "very sensitive" and that complaints like this in his previous units would have been immediately squashed.  Exhibit 7A, Tab 6.1.

(8)  Worley downplayed the EO complaint and told his 1SG that ***"well, it's not like I raped [*** ██████████ ***] ... well, not yet."***  Exhibit 7A, Tab 6.1, p.7. (Emphasis added).  I find this comment to be completely inappropriate and a gross deviation from the behavior I would expect of any commander within the IDARNG.  I find that Worley demonstrated an extreme lapse of judgment by making this statement.

(9)  Worley told his 1SG that ██████'s EO complaint was the 1SG's "fault." Exhibit 7A, Tab 6.1, pp. 13-15.  I find that Worley's passing of the buck to his 1SG to summarily dispose of ██████'s EO complaint and Worley's insinuation that 1SG had created a weak culture within D. Co. to a significant lapse of judgment.

SUBJECT:  Approval Authority Substituted Findings and Action Plan

(10)    Worley was aware that his behavior was having an impact on the unit. Exhibit 7A, Tab 6.1, pp. 14-15.  During a conversation with 1SG, Worley admitted that his open position created conflict in the unit.  1SG reminded Worley that even though many Soldiers in the company might share Worley's fundamental beliefs, they don't "talk about religion or politics [in the workplace] because we're not supposed to" and that "[Worley] was the first" to openly talk religion or politics in the workplace.  *Id.* at p. 14.  In addition, 1SG counseled Worley that recruiters are the face of "the guard as a whole" and that if any recruiter makes controversial open statements those comments are reflective of  the "guard as … entirety."  *Id.*  1SG reminded Worley that a recruiter's behavior has the possibility of alienating potential recruits, so recruiters have to be completely above board and neutral.  After receiving this mentorship from his 1SG, Worley "didn't really seem to care."  *Id* at p. 15.

g.  I find that Worley demonstrated counterproductive leadership in dealing with his higher-level commander.  The law requires that commanders demonstrate a good example of subordination.  *See* 10 USC 7233.  Worley did not demonstrate that in this case.

(1)  When told about ███████'s complaint, Worley did not attempt to find a solution that would benefit the unit.  Instead, he responded aggressively that he has a "God given right and will not tolerate this group [the LGBTQ] community to push their views onto his children."  Exhibit 7B.

(2)  When discussing the EO complaint with his commander, Worley states that "[LGBTQ ideologies] will only get worse over time and [that] we need to fight this." Exhibit 7B.

h.  I find that Worley's pre-employment political and religious activities are irrelevant to the determination of whether Worley unlawfully discriminated against ███████ and I do not consider them in any way in coming to my findings regarding his treatment of ██████ or the other members of D. Co., IDARNG RRB.  Worley was not a member of the IDARNG between 20 October 2021 and approximately 5 July 2023.  While his activities during that time period could be considered problematic under various DoD, US Army, National Guard, and Idaho laws and regulations, his activities are irrelevant to my analysis and my conclusion that Worley demonstrated counterproductive leadership.  My conclusions are drawn from Worley's actions within the time period from 5 July 2023 through 20 July 2023.

i.  I concur with the IO's finding that it is unsubstantiated that Worley failed to remove online political content in violation of the order to do so he received from BG Schwartz.

j.  I find that Worley breached the settlement agreement that was entered into on 22 September 2023.  Worley reviewed the proposed settlement agreement and signed it.  His independent, civilian legal counsel reviewed the settlement agreement and signed it.  Going back on his word further erodes my trust in his ability to command.

(1)    A mutually-agreed upon material term was that Worley would resign from the IDARNG or transfer to a different state or component within 120 days of the signing of the

SUBJECT:  Approval Authority Substituted Findings and Action Plan

agreement.  Worley not only failed to do that, he provided advanced notice of his intent to breach the agreement.

(2)  Another essential term of the settlement agreement was the non-disparagement clause.  Worley specifically agreed that he would not "publish, post, or otherwise release any material in written or electronic format, make speeches, gain interviews, or make public statements that mention the IDARNG."  The media articles from 28 August 2024 specifically mention the IDARNG and direct quotes from ████'s complaint.  The only individuals who had the complaint were agency representatives (the SEEM, the IO, legal officers, and myself), Worley, and his civilian attorney. I find it more likely than not that Worley or his attorney provided a copy of the incomplete and unapproved investigation to media outlets in direct violation of the parties' signed settlement agreement.

k.  I find that Worley or his representatives violate my reprisal plan.  In the media reports there are direct quotes from ████'s NGB Form 333.  The actions of providing ████'s complaint into the public information space constitutes interference and/or coercion against ████.  By going to the media, Worley has circumvented the investigative process in AR 15-6 and is attempting to influence the outcome of the investigation.

5.  **Commander's Action Plan**.  Having substituted my findings for those of the Investigating Officer, I direct the following actions:

a.  Pursuant to my authority under AR 600-20, I relieve MAJ Worley as commander of D Co., IDARNG RRB effective as of the date of this memorandum.  I have lost confidence in his ability to command due to his misconduct and poor judgment.

b.  I direct that MAJ Worley's One Time Occasional Tour orders be curtailed.

c.  I direct that MAJ Worley receive a General Officer Memorandum of Reprimand.  I will withhold a decision on filing pending resolution of the GOMOR process pursuant to Army regulations.

d.  I reject the IO's recommendations that MAJ Worley be counseled regarding extremist activities and political activities.  I direct that the IMD OGC provide MAJ Worley's independent legal counsel with the applicable policies and regulations and suggest to MAJ Worley's attorney that he advise his client accordingly.

e.  I adopt the recommendation to review the organizations various crisis helplines to determine whether they are properly supported and staffed.

f.  I adopt the recommendation for RRB to receive updated training on handling EO complaints.  I direct the IMD OGC and IDNG SEEM to facilitate that training.

SUBJECT:  Approval Authority Substituted Findings and Action Plan

    g.  I adopt but modify the IO's recommendation regarding background screenings of potential RRB commanders.  I direct that the IMD OGC and IMD HRO research the legality and feasibility of such background checks and provide recommendations to the TAG and ATAGs on possible courses of action.

    h.  I adopt the IO's recommendation to update IMD Policy 15, Political Activities of Idaho National Guard Employees and Military Members.  However, as that policy is within the purview of TAG, I will forward that recommendation to Maj Gen Donnellan for his consideration.

6.  **Point of Contact.** POC for this memorandum is MAJ Nate Peterson, at 208-272-5199 or nathaniel.b.peterson.mil@army.mil.

PACKWOOD.JAMES.COL
E.1152890539

Digitally signed by
PACKWOOD.JAMES.COLE.1152890539
Date: 2024.09.03 15:57:36 -06'00'

Encl.
See Appendix A Below

    J. COLE PACKWOOD
    Brigadier General, IDARNG
    Assistant Adjutant General/ Commander

SUBJECT:  Approval Authority Substituted Findings and Action Plan

**Appendix A – Additional Evidence Considered by Appointing Authority**

1. Settlement Agreement dated 22 September 2023
2. Ratification of Settlement of EO Complaint, dated 29 September 2023
3. NGB Form 333 Withdrawing Complaint
4. Worley Memorandum for AAG, dated 22 January 2024
5. 25 January 2024 Agency Reply to Worley's Attorney
6. Reprisal Plan and Whistleblower Protection Memorandum, dated 1 February 2024
7. Email Correspondence between the Agency and Worley's Attorney
8. Media Articles and Content
   a. World Net Daily article
   b. American Family Association article
   c. Christian Post article
   d. Daily Fly article
   e. Liberty Council website post
   f. Liberty Council letter to Governor Little