Stephen F. Smith
steve@smithmcowenlaw.com
Idaho Bar 2165
Smith & McOwen, Attorneys at Law
102 Superior Street
Sandpoint, ID 83864
Phone: (208) 263-3115

Mathew D. Staver (Fla. 0701092)
court@lc.org
Horatio G. Mihet (Fla. 026581)
hmihet@lc.org
Daniel J. Schmid (VA 84415)
dschmid@lc.org
Richard L. Mast (VA 80660)
rmast@lc.org
LIBERTY COUNSEL
P.O. Box 540774
Orlando, FL 32854
Phone: (407) 875-1776
Facsimile: (407) 875-0770
*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MAJOR DAVID T. WORLEY,<br><br>            Plaintiff,<br>v.<br><br>UNITED STATES,<br><br>            Defendant. | Case. No.: <u>1:25-cv-0025-DCN</u><br><br>FIRST AMENDED VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY RELIEF, AND DAMAGES. |

**"Our citizens in uniform may not be stripped of basic rights
simply because they doffed their civilian clothes."**[1]

For his FIRST AMENDED VERIFIED COMPLAINT against Defendant, UNITED STATES,[2] Plaintiff Major David T. Worley, alleges and avers as follows:

**URGENCIES JUSTIFYING EMERGENCY RELIEF**

1. Plaintiff, Major David T. Worley, is an Infantry Officer in the Idaho Army National Guard, who has been unlawfully, unconstitutionally, and unconscionably subjected to investigation, discrimination, retaliation, and punishment for the simple exercise of his First Amendment rights to engage in speech on matters of public concern—outside the confines of his duties with the Idaho Army National Guard—and to exercise his sincerely held religious beliefs without fear of discriminatory reprisal from his chain of command.

2. Major Worley engaged in private speech—outside the confines and strictures of his military duties—discussing issues and topics relevant to the political discourse taking place in his community. All of Major Worley's religious exercise and expression took place **before Major Worley even assumed his role in the Idaho Army National Guard**. Major Worley's constitutionally protected religious expression occurred during his campaigns for Mayor of

---

[1] *Chappell v. Wallace*, 462 U.S. 296, 304 (1983) (citing E. Warren, *The Bill of Rights and the Military*, 37 N.Y.U. L. Rev. 181, 188 (1962)).

[2] Major Worley hereby states for the record his objection to the Court's notion that Defendants Brad Little, in his official capacity as Governor of the State of Idaho and Commander in Chief of the Idaho National Guard; Major General Timothy J. Donnellan, in his official capacity as Adjutant General of the Idaho National Guard; and Brigadier General James C. Packwood, in his official capacity as Assistant Adjutant General of the Idaho Army National Guard, are not proper defendants in this action. Notwithstanding the Court's Order (Dkt. 25) and its citation to 10 U.S.C. §10508(b)(3)(C), Major Worley notes that such Defendants are only improper if the adverse actions giving rise to this action are brought under Title 5, which remains an open question and was not established at this stage of the proceedings. Major Worley continues to allege and aver that such Defendants are necessary for complete relief in this action and states his objection for the record.

1

Pocatello and Idaho State Senate, and while acting as private citizen after those campaigns concluded. He espoused his religious convictions and expressed his religious and moral opposition to certain issues, such as the so-called "Drag Queen Story Hours" and the indecent and obscene materials being provided to minors in public libraries, taking place in his community.

3.    In July 2023, Major Worley took command of the Idaho Army National Guard's Recruiting and Retention unit. A Sergeant First Class under Major Worley's command (hereinafter "Complaining Guardsman") performed a Google search of the Major after he had been promoted to command the unit. As a result of that search, the Complaining Guardsman, who was ideologically opposed to Major Worley's religious beliefs, views, and expression, filed a complaint with the Equal Opportunity Employment Commission (hereinafter "EO Complaint"), alleging Major Worley created a hostile work environment against the Complaining Guardsman for his alleged sexual orientation. The sole factual predicates of the EO Complaint against Major Worley were the press reports of Major Worley's opposition to Drag Queen Story Hour and the pornography, obscenity, and other inappropriate materials for minors in the public library, and Major Worley's speech on religious and moral issues that he gave as part of his political campaigns when he ran for elected office.

4.    Major Worley had met Complaining Guardsman on only two occasions, first at the initial meeting of his new command, and then a couple weeks later. Major Worley had no other interactions with Complaining Guardsman.

5.    As a result of the EO Complaint, Major Worley was unceremoniously haled into his command's office—just a few short days after assuming his new command—and told that he must resign or face significant and life-altering disciplinary proceedings. Major Worley initially

resigned but rescinded that resignation upon the advice of counsel and the swift realization that capitulation in the face of blatant injustice would be a stain on his honor and a betrayal of his faith.

6.      As a result of the EO Complaint, Major Worley was subjected to an administrative proceeding (hereinafter the "AR 15-6") in which he was investigated for his alleged offenses and was immediately suspended pending the process of that investigation and its conclusion.

7.      As a result of the investigation, the Investigating Officer recommended to Major Worley's Commanding Officers in the Idaho Army National Guard that Major Worley be permanently removed from command. The sole basis for this recommended removal of Major Worley was that he had engaged in religious expression and speech the Investigating Officer found offensive. The allegations giving rise the to investigation were not, as required by Army regulations, based upon abusive, self-serving, erratic, incompetent, or corrupt actions of a commander as  to warrant any finding of counterproductive leadership; and the recommended punishment that arose out of such investigation was unwarranted and inconsistent with Army regulations.

8.      To make matters worse, as part of his report to Major Worley's Commanding Officers in the Idaho Army National Guard, the Investigating Officer recommended that the Commanding Officers in the Idaho Army National Guard adopt a policy (hereinafter the "No Christians in Command" Policy) to ferret out "extremists" in the military by looking at the social media profiles of potential command candidates to make sure there is no "concerning information" about them, to determine how those candidates portray themselves publicly, to make sure the candidate would be supportive of a "diverse" groups of subordinates, and to get "the full picture" of the candidate's beliefs, views, and public expression, including whether they had any "concerning ideologies."

9.      The only "concerning" information about Major Worley was, of course, his religious views, beliefs, expression, and speech, and his religious exercise that the Complaining Guardsman found offensive and the EO Complaint based on that purported offense that Commanding Officers in the Idaho Army National Guard used to investigate, discipline, and remove Major Worley from command.

10.     After being removed from command while the investigation was undertaken and the administrative disciplinary proceedings concluded, Major Worley has been deprived of a duty position, assignments, and responsibilities. He was not allowed to drill with any unit, ostracized from the military, and his career has been rendered stagnant since July of 2023. That punishment and career stagnation continues to this day. In fact, despite the Commanding Officers in the Idaho Army National Guard and their punishment of Major Worley, officials in the United States Department of the Army have recommended him for promotion as of September 2025. Despite that Selection for Promotion, the Idaho Army National Guard has not provided any such promotion, and Major Worley continues to suffer adverse consequences of the Commanding Officers in the Idaho Army National Guard. This has caused and continues to cause irreparable harm to his reputation and career.

11.     Major Worley has served for over 22 years in the Army National Guard and has over 13 years of active service. The derailment of his career has almost rendered it impossible to receive the active-duty retirement he has been working towards for over two decades. This irreparable injury is solely the result of by being punished for the exercise and expression of his sincere religious convictions. And the allegedly offending religious expression and exercise all occurred prior to Major Worley's position as commanding officer of the Recruiting and Retention

4

Unit. That injury was the result of the unconstitutional and unlawful actions of the Commanding Officers in the Idaho Army National Guard.

12. On December 12, 2024, Major Worley was informed by the Commanding Officers in the Idaho Army National Guard that he was to be permanently separated from active duty with the Idaho National Guard, effective within thirty days of the finalization of the paperwork. This separation will result in the loss of his livelihood and the ability to acquire points and promotions. It will also severely limit his ability to receive full-time military employment in the future.

13. On information and belief, only Major Worley's institution of this action precluded him from being permanently separated from the Idaho Army National Guard Absent a temporary restraining order and preliminary injunction maintaining the status quo *ante* while this matter is adjudicated, Major Worley will suffer further irreparable harm that cannot be undone after prevailing on the merits of his claims.

14. Absent declaratory and injunctive relief from this Court, Major Worley will continue to be precluded from accepting the promotion that the United States has recommended him for, will continue to suffer the consequences of his being deprived of a duty position, assignments, and responsibilities, being deprived of the ability to drill with any unit, ostracized from the military, and his career remaining stagnant since July of 2023. Major Worley's unceremonious, unconstitutional, and unlawful removal of his position permanently and separated from the active-duty force of the Idaho Army National Guard and potentially separated from the military entirely and permanently for the mere exercise of his constitutionally protected rights to religion and speech.

15. The First Amendment, the Fourteenth Amendment, and the Religious Freedom Restoration Act, and the Idaho Free Exercise of Religion Protection Act all demand more, and this

Court should enter declaratory, injunctive, and equitable relief protecting Major Worley's sincerely held and constitutionally protected religious beliefs, views, and expression from irreparable harm and returning him to the position he held prior to the unconstitutional discrimination. Major Worley has waited long enough, and the time has come to restore him to the position his dedicated service entitled him to and that his dedicated service to the Republic warrants.

**<u>INTRODUCTION</u>**

16. "Greater love hath no man than this, that a man lay down his life for his friends." *John* 15:13 (KJV). Major Worley agreed, voluntarily and sacrificially, to devote his life to this axiomatic truth, regardless of the cost to him personally or to his family who likewise sacrifices in defense of this Nation. Major Worley has sworn an oath to protect and defend the Constitution of the United States, to sacrificially lay down his life for his fellow citizens against enemies both foreign and domestic, and to preserve for our progeny the heritage and treasure passed down to them by Veterans of old. And, for that sacrifice in defense of the Constitution and our freedoms, Commanding Officers in the Idaho Army National Guard threatened Major Worley with permanent separation for simply exercising his First Amendment rights to engage in speech on matters of public concern—outside the confines (and before) his duties with the Idaho Army National Guard—and to exercise and express his sincerely held religious beliefs without fear of discriminatory reprisal from his chain of command.

17. Having sacrificed to defend America and its citizenry—and while carrying the images and sounds of war with him throughout his life— Commanding Officers in the Idaho Army National Guard have tarnished and seek to continue tarnishing Major Worley's reputation and good name by separating him from active-duty service for expressing and exercising his religious beliefs. Thus, for the mere exercise of his sincere religious convictions and the expression of those

convictions in the public arena, Commanding Officers in the Idaho Army National Guard seek to throw him out in the cold. This Court must stop that constitutional tragedy from occurring.

18.     As the Supreme Court has long affirmed, the heroes of the United States Armed Forces do not shed their constitutional rights at the moment of their sacrificial oath. Indeed, "[t]his Court has never held, nor do we now hold, that military personnel are barred from all redress in civilian courts for constitutional wrongs suffered in the course of military service." *Chappell v. Wallace*, 462 U.S. 296, 304 (1983).

19.     Moreover, while Major Worley certainly has duties and responsibilities "without counterpart in civilian life," *Schlesinger v. Councilman*, 420 U.S. 738, 757 (1975), **the Constitution still provides him with the same blanket of constitutional protection that his dedicated service and sacrifice provided to the average civilian**. For to turn the same Constitution that Major Worley swore to protect and defend into a weapon against him would be a travesty unknown to the Nation's founding charter and eclipse any dereliction of duty heretofore seen in the great experiment of America.

20.     Indeed, as Justice Brennan noted,

> Military (or national) security is a weighty interest, not least of all because national survival is an indispensable condition of national liberties. But the concept of military necessity is seductively broad, and has a dangerous plasticity. **Because they invariably have the visage of overriding importance, there is always a temptation to invoke security "necessities" to justify an encroachment upon civil liberties. For that reason, the military-security argument must be approached with a healthy skepticism: its very gravity counsels that courts be cautious when military necessity is invoked by the Government to justify a trespass on First Amendment rights.**

*Brown v. Glines*, 444 U.S. 348, 369 (1980) (Brennan, J., dissenting) (emphasis added) (citation omitted).

21.     That Major Worley must appeal to this Article III Court is of no constitutional accident, and is of no constitutional barrier:

> To be sure, generals and admirals, not federal judges, are expert about military needs. **But it is equally true that judges, not military officers, possess the competence and authority to interpret and apply the First Amendment.** Moreover, in the context of this case, the expertise of military officials is, to a great degree, tainted by the natural self-interest that inevitably influences their exercise of the power to control expression. Partiality must be expected when government authorities censor the views of subordinates, especially if those views are critical of the censors. **Larger, but vaguely defined, interests in discipline or military efficiency may all too easily become identified with officials' personal or bureaucratic preferences. This Court abdicates its responsibility to safeguard free expression when it reflexively bows before the shibboleth of military necessity.**

*Id.* at 370 (emphasis added).

22.     Major Worley, who swore an oath to protect the cherished constitutional freedoms outlined in the Nation's Charter can also invoke those same constitutional protections for breaches of his own liberties, despite military service. Here, Commanding Officers in the Idaho Army National Guard have made it clear that they think Major Worley's sacrificial act of swearing an oath to protect the Nation and support and defend the Constitution is accompanied by the sacrificial surrender of those same constitutional protections he defends. The Constitution opposes such callous indifference to sacrificial service, and so, too, should the Court.

23.     Indeed, "military life do[es] not, of course, render entirely nugatory in the military context the guarantees of the First Amendment." *Goldman v. Weinberger*, 475 U.S. 503, 507 (1986). *See also Crawford v. Cushman*, 531 F.2d 1114, 1120 (2d Cir. 1976) (**"[T]he military is subject to the Bill of Rights and its constitutional implications**." (emphasis added)). Put simply, "although First Amendment rights . . . may be 'less' for a soldier than a civilian, they are by no means lost to him." *Anderson v. Laird*, 466 F.2d 283, 295 (D.C. Cir. 1972). "**Individual freedom**

8

**may not be sacrificed to military interests to the point that constitutional rights are abolished**." *Id.* (emphasis added).

24. Major Worley voluntarily and sacrificially answered his Nation's call to defend the defenseless and preserve for our posterity the freedoms the citizens of America and Idaho enjoy. In return, Commanding Officers in the Idaho Army National Guard seek to flip those constitutional protections against Major Worley and suggest the exercise of such freedoms cease to exist upon his enlistment. Balderdash. "It is a basic tenet of our legal system that a government agency is not at liberty to ignore its own laws and that agency action in contravention of applicable statutes and regulations is unlawful. **The military departments enjoy no immunity from this proscription**." *Dilley v. Alexander*, 603 F.2d 914, 920 (D.C. Cir. 1979) (emphasis added) (citation omitted). For without question, when critical constitutional rights are at issue, "the Supreme Court [has] heard numerous constitutional challenges to military policies." *Singh v. Carter*, 168 F. Supp. 3d 216, 225 (D.D.C. 2016) (cleaned up).

25. When we have demanded so much of our Soldiers, Sailors, Airmen, and Marines, we owe them nothing less than the full measure of our own devotion to constitutional principles. Anything less would be desecrating the sacrifices the generations of heroes in the United States Military and the Idaho National Guard, including Major Worley, have made for untold numbers of people when the call of duty demanded it and would trample upon the graves of so many who made the ultimate sacrifice for the Constitution to endure.

26. When the great American experiment was commenced, our Founders ordained and established the Constitution—including all of the rights it recognized and enshrined—"in Order to form a more perfect Union, establish Justice, insure domestic Tranquility, provide for the common defence, promote the general Welfare, and secure the Blessings of Liberty to ourselves and our

9

Posterity." U.S. Const. Pmbl. To this very day, "we continue to strive toward '[that] more perfect union.'" *Smith v. City of New Smyrna Beach*, No. 6:11–cv–1110–Orl–37KRS, 2013 WL 5230659, at *1 (M.D. Fla. Sept. 16, 2013). That work is not easy, and sometimes it requires the intervention of the judiciary to set the guardrails for the protection of the Republic's liberties. For its part, too, the Idaho Constitution began "We, the people of the state of Idaho, grateful to Almighty God for our freedoms, to secure its blessing and promote our common welfare do establish this Constitution." Idaho Const., Pmbl.

27.     Recognizing that times of vehement disagreement surrounding significant public issues would invariably arise, that such times might lead governments to seek to repress precious freedoms in the name of expediency, and that the Republic's survival depended upon defeating such repressive instincts, the genius of our founding charter is that it placed explicit protections into the text of the Bill of Rights. And, importantly, "[o]ur Bill of Rights placed our survival on firmer ground—that of freedom, not repression." *Konigsberg v. State Bar of California*, 366 U.S. 36, 79 (1961) (Black, J., dissenting).

28.     "[T]he fog of public excitement obscures the ancient landmarks set up in our Bill of Rights." *American Communist Ass'n, C.I.O. v. Douds*, 339 U.S. 382, 453 (1950) (Black, J., dissenting). But, where the fog of public excitement and disagreement is at its apex, "the more imperative is the need to preserve inviolate the constitutional rights of [the First Amendment]." *De Jonge v. Oregon*, 299 U.S. 353, 365 (1937). Without doubt, "[t]herein lies the security of the Republic, the very foundation of constitutional government." *Id.*

29.     Certainly, governmental instincts toward tranquility of the citizenry are oft accompanied by a desire for convenient disposition of vehement disagreements, "But the ultimate strength of our constitutional guarantees lies in the unhesitating application in times of crisis and

10

tranquility alike." *United States v. Bell*, 464 F.2d 667, 676 (2d Cir. 1972) (Mansfield, J., concurring). For, "**[i]f the provisions of the Constitution be not upheld when they pinch as well as when they comfort, they may as well be discarded**." *Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 483 (1934) (Sutherland, J., dissenting) (emphasis added).

30.    Major Worley has demonstrated his commitment to the United States and Idaho Constitutions, has sacrificed admirably for the Nation's future comfort, security, and prosperity, and has served his Nation and Idaho with honor and distinction. He has devoted over two decades to his sacrificial service and has deployed to fight in the Nation's wars. **The Court should demand that the Nation and Idaho return the favor.**

31.    "Our nation asks the men and women in our military to serve, suffer, and sacrifice. But we do not ask them to lay aside their citizenry and give up the very rights they have sworn to protect." *U.S. Navy Seals 1-26 v. Biden*, 578 F. Supp. 3d 822, 826 (N.D. Tex. 2022).

32.    This Court should enter declaratory, injunctive, and equitable relief protecting Major Worley's sincerely held and constitutionally protected religious beliefs, views, and expression from irreparable harm and returning him to the position he held prior to the unconstitutional discrimination giving rise to his claim. Major Worley has waited long enough, and the time has come to restore him to the position his dedicated service entitled him to and that his dedicated service to the Republic warrants.

## PARTIES

33.    Plaintiff, Major David T. Worley, is a citizen of the State of Idaho and a Major in the Idaho Army National Guard.

11

34.     Defendant, United States of America, is responsible for overseeing all aspect of the Republic's reserve Army, including the Idaho Army National Guard, and is subject to suit in this action under 10 U.S.C. §10508.

## JURISDICTION AND VENUE

35.     This action arises under the First and Fourteenth Amendments to the United States Constitution; the Religious Freedom Restoration Act (RFRA), 42 U.S.C. 2000bb-1; 42 U.S.C. 1983; and the Idaho Free Exercise of Religion Protection Act (IRFRA), Idaho Code §73-402, *et seq*.

36.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

37.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e)(1) because this action is against the United States and this District is where a substantial part of the events or omissions giving rise to this claim occurred.

38.     This Court has the authority to grant the requested declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, implemented through Rule 57, Federal Rules of Civil Procedure, and the requested injunctive relief under 28 U.S.C. § 2202 and Rule 65, Federal Rules of Civil Procedure.

39.     This Court has the authority to award the requested costs and attorney's fees under 42 U.S.C. § 1988.

## GENERAL ALLEGATIONS

**A.     Major Worley and His 22 Years of Admirable and Honorable Service.**

40.     Major Worley has been a member of the National Guard for 23 years.

41.     Major Worley has deployed multiple times—including two combat deployments to Iraq during Operation Iraqi Freedom.

42.     Major Worley is a man of Christian faith and is a leader in his church and community. Major Worley has frequently and publicly expressed his faith in the public arena and shared his religious and political convictions as a matter of principle.

43.     Major Worley has sincerely held religious beliefs that Scripture is the infallible, inerrant word of the Lord Jesus Christ, and that he is to follow its teachings.

44.     Major Worley has sincerely held religious beliefs, compelled by Scripture, that "to him that knoweth to do good, and doeth it not, to him it is sin." *James* 4:7 (KJV).

45.     Major Worley also has sincerely held religious beliefs, compelled by Scripture, that he is to "take no part in the unfruitful works of darkness," but to "expose them." *Ephesians* 5:11 (ESV).

46.     Major Worley also has sincerely held religious beliefs, compelled by Scripture, that require him to understand that silence in the face of evil is evil itself. *See Provers* 8:1-8 ("Doth wisdom not cry? And understanding put forth her voice . . . She crieth at the gates, at the entry of the city, at the coming in at the doors. . . . Hear, for I will speak excellent things; and the opening of my lips shall be right things. For my mouth speak truth; and wickedness is an abomination to my lips. All the words of my mouth are in righteousness; there is nothing froward or perverse in them." (KJV)).

47.     Major Worley also has sincerely held religious beliefs, compelled by Scripture, that he is to "open [his] mouth for the mute, for the rights of all who are destitute" and to "[o]pen [his] mouth" and "judge righteously." *Proverbs* 31:8-9 (ESV).

48.    Major Worley also has sincerely held religious beliefs, compelled by Scripture, that there is "a time to keep silence, and a time to speak," *Ecclesiastes* 3:7 (ESV), and that the time to speak is when that which he views as immoral and wrong is taking place in society.

49.    Major Worley also has sincerely held religious beliefs that for him to fail to speak out against things he knows are wrong results in the eternal condemnation of his soul. "If you say, 'behold, we did not know this,' does not he who weighs the heart perceive it? Does not he who keeps watch over your soul know it, and will he not repay man according to his work." *Proverbs* 24:12 (ESV).

50.    In addition to his admirable service in the Nation's armed forces, Major Worley has demonstrated his commitment to helping the most vulnerable in the community.

51.    Earlier last year, Major Worley was commended for his bravery and heroism for stopping a criminal beating a woman in an intersection. *See* Journal Staff, *National Guard Maj. Worley reportedly stops man from beating woman at Pocatello intersection*, Idaho State Journal (Feb. 19, 2024), *available at* https://www.idahostatejournal.com/freeaccess/national-guard-maj-worley-reportedly-stops-man-from-beating-woman-atpocatello-intersection/article_4393557e-cfae-11ee-a548-f3495c5facc4.html (last visited January 15, 2025).

52.    In that incident, Major Worley was driving through his hometown and witnessed a violent criminal publicly beating a woman in an intersection. He immediately pulled his vehicle over, quickly exited, and intervened to rescue the woman from the man's criminal assault.

53.    Major Worley held the attacker captive while waiting for police to arrive, and the police arrested the suspect upon arrival. His actions were recognized by the Pocatello Police Department, and he was given an award for his service as a citizen.

54.    Major Worley's commitment to the cause of justice, including through his service in the armed forces and in his everyday life, is compelled by his sincerely held religious beliefs that God requires him "to do justice, to live kindness, and to walk humbly with [his] God." *Micah* 6:8 (ESV).

**B.    The Unlawful EO Complaint against Major Worley.**

55.    In March 2023, Major Worley was selected for a two-year one-time Occasional Tour with the Idaho Army National Guard as the Commander of the Idaho Army National Guard Recruiting and Retention Battalion. Major Worley's orders started July 1, 2023.

56.    Major Worley's first day of work was Wednesday July 5th, and on Friday July 7th his unit had its pre-drill meeting with full-time staff.

57.    This is the first time Major Worley met and had any interaction with the Complaining Guardsman who filed the EO Complaint against him.

58.    Major Worley shook his hand and sat next to him during the meeting, but didn't have any other interactions.

59.    Six days later, on July 13, 2023, the Complaining Guardsman, a Sergeant First Class under Major Worley's command filed the EO Complaint against him.

60.    The EO Complaint alleged that Major Worley discriminated against the Complaining Guardsman due to his alleged sexual orientation, and that Major Worley (in the six days he was in command) had created a hostile work environment for the allegedly offended Complaining Guardsman. (Dkt. 1-1.)

61.    The EO Complaint stated that Complaining Guardsman "fe[lt] like [he] had been discriminated against because of [his] sexual orientation and that is has [sic] a hostile work

environment during the time of 6 July 2023 to current." (Dkt. 1-1, 2.) Notably, "to current" was the vast span of six days.

62. Complaining Guardsman alleged that Major Worley belonged to an "extremist/hate group" which created a hostile work environment and caused the Complaining Guardsman to believe he was "being discriminated against because of [his] sexual orientation." (Dkt. 1-1, 2.)

63. The Complaining Guardsman took issue with Major Worley's private social media posts that discussed his political campaign for Mayor of Pocatello and State Senate, discussed the positions of his opponents in the senate race, and discussed the need to return to "truth, decency, and morality." (*See* Dkt. 1-1, 2, 14-20.)

64. The sole basis for the Complaining Guardsman's EO Complaint against Major Worley was the allegedly offensive, extremists, and hateful views of Major Worley's sincerely held religious beliefs, views, and expressions.

65. The requested relief in Complaining Guardsman's EO Complaint was to have Major Worley "IMMEDIATELY REMOVED AS MY COMMANDER AND THEN TO HAVE [MAJOR WORLEY] REMOVED FROM THE IDAHO ARMY NATIONAL GUARD SO THAT HE NEVER HAS COMMAND AUTHORITY OVER ANYONE AGAIN." (Dkt. 1-1, 2 (emphasis original).)

## C.    The Investigation and Recommendations against Major Worley.

66. On July 18, 2023, Major Worley's chain of command ordered him into a meeting in which he was forced to choose between signing a "voluntary resignation" or facing significant investigations and punishments. Major Worley's command did not bother with the constitutional or legal requirements of due process in such meeting, denied his right to legal counsel, did not

16

follow Department of Defense procedures, and ignored the requirement to provide Major Worley with a reading of his Article 31 rights.

67.    Under duress, Major Worley capitulated but immediately rescinded that impermissible procedure upon the advice of counsel and the swift realization that capitulation in the face of blatant injustice would be a stain on his honor and a betrayal of his faith.

68.    Major Worley's command accepted the rescinded resignation, and immediately followed through on their threatened investigations and administrative punishments.

69.    Major Worley was immediately removed from command during the process of investigation. **That suspension and removal from command continue to this day—over 30 months after the constitutional injury began.**

70.    On February 1, 2024, Major Worley's command provided him the Report of Proceedings by Investigating Officer. (*See* Dkt. 1-2.)

71.    The Investigating Officer found the hostile work environment claims to be "Substantiated" because of Major Worley's "publicly stated views toward LGBTQ members created a workplace environment for [Complaining Guardsman] where [Complaining Guardsman] reasonably felt intimidated and threatened based on his sexual orientation." (Dkt. 1-2, 2.)

72.    The Investigating Officer stated, in his findings, that Major Worley had "well-documented discriminatory views against the LGBTQ community" that "suggest an inability to uphold the values of equality, respect, and impartiality expected of a company commander." (Dkt. 1-2, 3.)

73.    The Investigating Officer stated that removing Major Worley from his command on the basis of his religious beliefs, views, and expression was necessary "not only [to] address the immediate concerns raised by [Complaining Guardsman] but would also uphold the broader

principles of leadership integrity and nondiscrimination in the Idaho Army National Guard." (Dkt. 1-2, 3.)

74.    As further support for his findings and recommendations, the Investigating Officer made plain that it was Major Worley's "publicly documented political activities" and that his report would document "many of those **concerning activities**." (Dkt. 1-2, 5 (emphasis added).)

75.    Because Major Worley provided a written response, but refused to participate in the sham proceedings designed to legitimize the political and religious discrimination already undertaken by Commanding Officers of the Idaho Army National Guard in removing him from command, the Investigating Officer stated that "statements made by MAJ Worley in the past are included as evidence of his attitudes toward the LGBTQ community." (Dkt. 1-2, 6.) Those past "statements" included the same social media posts from Major Worley that Complaining Guardsman used as the basis of the EO Complaint.

76.    As part of his factual findings, the Investigating Officer stated that evidence of Major Worley's creation of a hostile work environment included, Complaining Guardsman's research on Major Worley's social media posts, "his political activities and his publicly stated feelings on LGBTQ issues," that Major Worley was affiliated with an advocacy organization that (prior to his time in the full-time Idaho Army National Guard) engaged in "a protest at the Pocatello library" concerning LGBTQ issues, that Major Worley had referred to "LGBTQ ideologies as 'immoral,'" and that Major Worley had expressed views "directed at transgender care for children, and perceived pornography in libraries." (Dkt. 1-2, 14.)

77.    All of the Investigating Officer's findings are based on Major Worley's publicly stated expressions of issues of public importance and on Major Worley's religious speech.

18

78.    The Investigating Officer further concludes that Major Worley's religious and political views represent "concerning ideologies" and "questionable political activities and statements." (Dkt. 1-2, 13.)

79.    The Investigating Officer further found that Major Worley's conversations with his command revealed his "inner thoughts on the LGBTQ community" in a way that the Investigating Officer found troubling. (Dkt. 1-2, 3, 19.)

80.    The Investigating Officer then concluded that Major Worley should be "permanently removed from his position" and recommended the same. (Dkt. 1-2, 3, 19.)

**D.    The Substituted Findings and Ordered Relief of Command.**

81.    Brigadier General Packwood reviewed the Investigating Officer's findings and made his Substituted Findings and Action Plan on September 3, 2024. (*See* Dkt. 1-3.)

82.    Despite Brigadier General Packwood's finding that that the essential components of Complaining Guardsman's EO Complaint against Major Worley were not justified, lacked evidentiary support, and were otherwise unsubstantiated, Brigadier General Packwood found that the suspension of Major Worley from command during the investigation and AR 15-6 was justified. (Dkt. 1-3, 5.)

83.    Brigadier General Packwood found that Major Worley's treatment of [Complaining Guardsman] did not constitute unlawful discrimination based on Complaining Guardsman's sexual orientation. (Dkt. 1-3, 5.)

84.    Brigadier General Packwood found that Major Worley did not create a hostile work environment because "there is not sufficient evidence that Worley's conduct was *because of* [Complaining Guardsman's] sexual orientation." (Dkt. 1-3, 5.)

19

85. Brigadier General Packwood did, however, state that Major Worley's religious beliefs, views, and expression were "unwelcome and offensive." (Dkt. 1-3., 5.)

86. Brigadier General Packwood found that Major Worley's alleged actions "did not constitute unlawful harassment *because of* [Complaining Guardsman's] sexual orientation." (Dkt. 1-3, 5.)

87. Specifically, Brigadier General Packwood stated, "There is no evidence that Worley's treatment of [Complaining Guardsman] became a condition of employment, or that Worley's treatment was either severe or pervasive enough to meet the threshold definition of the technical legal definition of discriminatory harassment." Dkt. 1-3, 5.)

88. Further, Brigadier General Packwood concluded that "[a] reasonable person could not conclude that Worley's treatment of [Complaining Guardsman] constituted harassment *because of* his sexual orientation." (Dkt. 1-3., 5.)

89. **Despite finding that all of the bases for Complaining Guardsman's EO Complaint against Major Worley were neither merited nor supported by the evidence, Brigadier General Packwood nevertheless concluded that Major Worley's religious beliefs, views, and expression demonstrated "counterproductive leadership."** (Dkt. 1-3, 6 (emphasis added).)

90. All of Brigadier General Packwood's findings concerning the "counterproductive leadership" arose from Major Worley's assertion of his rights, his exercise of his sincerely held religious beliefs, or the expression of his religious views outside of the workplace. (*See* dkt. 1-3, 6-8.) The did not arise, as is required by Army regulations, from allegations of abusive, self-serving, erratic, incompetent, or corrupt behavior from a commander. In other words, Major Worley's offenses arose not prior to the EO Complaint but as a result of his objections to the EO

Complaint that was found unsubstantiated and meritless, his objections to the investigation even commencing on the basis or such unfounded and facially unmerited claims, and his unconstitutional treatment in the process of that investigation.

**E.      The No Christians In Command Policy.**

91.      In addition to his unconstitutional and unconscionable findings as it relates to Major Worley's religious beliefs, views, expression, and exercise, the Investigating Officer also recommended to Commanding Officers of the Idaho Army National Guard that they institute a policy and practice of screening out applicants for command to ensure that no problematic ideologies or religious views exist. Major Worley refers to this recommended and adopted policy and practice as the "No Christians in Command" Policy.

92.      As part of his recommendations, the Investigating Officer found: "Lack of research into the backgrounds of potential RRB Company Commanders prevented the selection board from having a full and complete picture of the personalities of the candidates being selected." (Dkt. 1-2, 19.) The unquestioned thrust of his finding is that had Commanding Officers of the Idaho Army National Guard known of Major Worley's political and religious views, they never would have given him command.

93.      He stated, "Recommendations include instituting a policy to review public online profiles of candidates, especially for high-profile positions, to ensure they uphold the trust and professionalism expected in the Military." (Dkt. 1-2, 19.)

94.      Additionally, the Investigating Officer found that because of

the very public nature of leadership within the RRB, recommend that consideration be given to creating a policy within the RRB of conducting public records search on the Internet and on popular social media sites to see how a selected candidate portrays themselves publicly. This would provide additional information that can be used to better understand the full picture of any candidate selected for a high-profile position and help determine whether they will be able to foster the type of

21

trust and confidence with Soldiers and the public required to be successful in their position.

(Dkt. 1-2, 3.)[3]

95.    To put it more bluntly, the Investigating Officer found that whenever his newly recommended policy be violated, that those whose social media posts do not conform to the No Christians in Command Policy be reported to the Department of Defense Counterintelligence office to be evaluated as threats. (Dkt. 1-2, 3 ("**In light of information uncovered during the conduct of this investigation** and in accordance with the instructions contained in DoDl 1325.06p (Handling Protest, Extremist, and Criminal Gang Activities Among Members of the Armed Forces, November 27, 2009, Change 2 Effective December 20, 2021) Reporting Requirements, I recommend that all FTNGD candidates **are scrutinized to ensure there is no concerning information within the public domain** that would, if substantiated, potentially involve reporting requirements through the state G2 to the DoD Counterintelligence reporting hub and Insider Threat Hub for adjudication by subject matter experts." (emphasis added).)

96.    **In other words, "In light of [Major Worley's religious beliefs, views, expression, and exercise]," the Investigating Officer recommended that all candidates for command be scrutinized to ensure that their Christian beliefs, views, or expression are discovered prior to be given command and reported to the Department of Defense for investigation of concerning extremist activity**. (*Cf.* dkt. 1-2, 3.)

---

[3]    Despite the Court's statement that Major Worley did not offer any documents or allegations to demonstrate the existence of the No Christians in Command Policy, Exhibit B to the Verified Complaint (dkt. 1-2) plainly demonstrates that Commanders in the Idaho Army National Guard recommended and adopted a policy of screening and investigating applicants to ensure no "concerning information" get a "full picture" of the candidate's ideologies. (Dkt. 1-2, 3.)

97. As evident by the Investigating Officer's Report and recommendations, those with Christian and religious views need to be screened to ensure that no such individual is selected for command because those persons cannot "serve with persons of diverse backgrounds." (Dkt. 1-2, 3.)

98. Simply put, the Investigating Officer in this matter recommended that there be **No Christians in Command** in the Idaho Army National Guard because of their "concerning ideologies."

99. Brigadier General Packwood reviewed the Investigating Officer's findings, and sustained the recommendation concerning the No Christians in Command Policy with slight modifications. (Dkt .1-3, 9.)

100. Rather than running headlong into the Investigating Officer's recommendations, Brigadier General Packwood said that the Guard needed to "research the legality and feasibility" of reviewing the political and religious views of those in line for command. (Dkt. 1-3, 9.)

101. Nevertheless, Brigadier General Packwood affirmed **in whole** the recommendation to monitor the "Political Activities of Idaho National Guard" to reflect the "extremism" instruction from the Department of Defense. (Dkt. 1-3, 9.)

102. In other words, Brigadier General Packwood affirmed the need to **scrutinize potential candidates for command to ensure that their Christian beliefs, views, or expression are discovered prior to be given command and reported to the Department of Defense for investigation of concerning extremist activity**

103. As such, Brigadier General Packwood affirmed the No Christians in Command Policy by affirming the modification of Idaho National Guard Policy to reflect the "rooting out"

23

of extremism and monitoring potential candidates for command to ensure they have no concerning Christian or religious ideologies.

104.    Moreover, Brigadier General Packwood affirmed, not just in word, but in deed, the No Christians in Command Policy by ordering Major Worley removed from command on the basis of an EO Complaint that he found to have no evidence. Instead of dismissing such a baseless complaint for its transparent attempts to silence religious views different from the Complaining Guardsman, Brigadier General Packwood used that evidentiarily defunct complaint to sanction, punish, and remove Major Worley from his command for the mere exercise and expression of his religious views.

**F.      Defendants' Final Conclusions Concerning Major Worley.**

105.    On December 13, 2024, Brigadier General Packwood made the following finding relating to the EO Complaint against Major Worley. (Dkt. 1-4.)

106.    As to the charge that Major Worley discriminated against Complaining Guardsman on the basis of Complaining Guardsman's sexual orientation, Brigadier General Packwood found the claim "UNSUBSTANTIATED." (Dkt. 1-4, 1.)

107.    As to the charge that Major Worley discriminated against Complaining Guardsman by creating a hostile work environment by engaging in severe and/or pervasive behavior against Complaining Guardsman because of his sexual orientation, Brigadier General Packwood found the claim "UNSUBSTANTIATED." (Dkt. 1-4, 1.)

108.    As to the charge that Major Worley discriminated against Complaining Guardsman by creating a hostile work environment on the basis of Major Worley's alleged involvement with "extremist/hate groups," Brigadier General Packwood found the claim "UNSUBSTANTIATED." (Dkt. 1-4, 1.)

24

109.    As to the charge that Major Worley failed to remove online political content in violation of the order to do so, Brigadier General Packwood found the claim "UNSUBSTANTIATED." (Dkt. 1-4, 1.)

110.    Thus, as to all of the bases that formed the Complaining Guardsman's EO Complaint against Major Worley, Brigadier General Packwood found each claim to be unsubstantiated. In other words, there was no basis to even begin the investigation into Major Worley for his religious views and expression.

111.    Nevertheless, despite finding all claims by the Complaining Guardsman to be unsubstantiated and lacking in evidence, Brigadier General Packwood concluded that Major Worley engaged in counterproductive leadership as that phrase is defined in ADP 6-22.

112.    "Counterproductive leadership" is described in ADP 6-22 as, *inter alia*, "toxic." *See* ADP 6-22, ADP_6-22_Army Leadership And https://www.usarcent.army.mil/Portals/1/Documents/regs/ADP_622_Army%20Leadership%20And%20The%20Profession%20July2019.pdfThe Profession July2019.pdf (last visited March 5, 2026).

113.    "Infrequent or one-time negative behaviors do not define counterproductive leadership. Often, counterproductive leadership behaviors have harmful effects on individuals or a unit when several instances occur together or take place frequently." *Id.* at 8-48.

114.    "Counterproductive leadership," as defined, cannot therefore include one-time behaviors or conduct that, by Brigadier General Packwood's own admissions, "was not sufficiently severe or pervasive." (Dkt. 1-3, 5.)

115.    Thus, the only basis left to conclude that Major Worley engaged in counterproductive leadership is that his religious beliefs, views, and expression were "toxic" in the

25

eyes of his superiors, a finding made explicit by the Investigating Officer whose decision Brigadier General Packwood ratified.

116. The only claim to be substantiated resulted, not from the EO Complaint, but from claims that arose outside of the baseless EO Complaint and from the assertion of rights that Major Worley engaged in during the investigation.

117. In other words, despite lacking any evidence of an actual violation, Major Worley's investigation, administrative proceedings, removal from command, and imminent separation arose outside of the baseless EO Complaint and from the assertion of rights that Major Worley engaged in during the investigation.

**G.    The Idaho Army National Guard General Officer's Memorandum of Reprimand.**

118. On December 18, 2024, Brigadier General Packwood issued Major Worley a General Officer's Memorandum of Reprimand, pouring salt over Commanding Officers of the Idaho Army National Guard' already inflicted constitutional wound. (Dkt. 1-5.)

119. In the GOMOR, Brigadier General Packwood officially reprimands Major Worley for asserting his rights in the investigation into his religious exercise and comments he made during the course of that unconscionable investigation.

120. Notably, nothing in the reprimand pointed to *any* conduct outside of the course of the investigation, but rather purported to criticize Major Worley for purportedly failing to "maintain the Army's core values and standards." (Dkt. 1-5, 1.)

**H.    Irreparable Injury to Major Worley.**

121. Major Worley has suffered, is suffering, and will continue to suffer irreparable injury by being unceremoniously removed from command solely on the basis of his constitutionally protected religious beliefs, views, and expression.

26

122. Major Worley has suffered, is suffering, and will continue to suffer irreparable injury by being forced into resignation (later acceptingly rescinded) on the basis of an unsubstantiated EO Complaint that arose solely from his constitutionally protected religious views, beliefs, and expression.

123. Major Worley has suffered, is suffering, and will continue to suffer irreparable injury by being subjected to an administrative and disciplinary investigation solely on the basis of his constitutionally protected religious views, beliefs, and expression.

124. Major Worley has suffered, is suffering, and will continue to suffer irreparable injury by being threatened with and facing immediate and permanent separation from the active-duty force of the Idaho National Guard solely on the basis of his constitutionally protected religious views, beliefs, and expression.

125. Major Worley has suffered, is suffering, and will continue to suffer irreparable injury by being ostracized and constitutionally orphaned from his unit on the basis of the unlawful investigation and discipline against him, by being excluded from any duty assignments on the basis of the unlawful investigation and discipline against him, and by being precluded from obtaining the promotion to Lieutenant Colonel that even the United States Department of the Army Promotion Board has recommended him for as of September 2025, and by being precluded from assuming any command role by the Commanding Officers of the Idaho Army National Guard.

126. Absent a temporary restraining order and preliminary injunction maintaining the status quo while this matter is adjudicated, Major Worley will suffer further irreparable harm that cannot be undone after prevailing on the merits of his claims.

## COUNT I - VIOLATION OF THE FREE SPEECH CLAUSE OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION

127. Plaintiff hereby realleges and adopts each and every allegation in paragraphs 1–126 above as if fully set forth herein.

128. The Free Speech Clause of the First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, prohibits Defendants from abridging Plaintiff's freedom of speech.

129. The Free Speech Clause of the First Amendment, applicable to the states through the Fourteenth Amendment, prohibits the state from excluding Plaintiff from government programs and positions based on his religion, and such "exclusion constitutes viewpoint discrimination." *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 107 (2001).

130. The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, on its face and as applied, unconstitutionally discriminates on the basis of viewpoint.

131. Through the "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, on its face and as applied, Commanding Officers of the Idaho Army National Guard acted to exclude Plaintiff from a government program solely due to his religious identity and the expression of his Bible-centered beliefs and viewpoint.

132. Government efforts to punish speech based on the "specific motivating ideology or the opinion or perspective of the speaker" is a "blatant" and "egregious" form of speech restriction. *Rosenberger v. Rector and Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995).

133. The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, on its face and as applied, singled out Plaintiff solely because of his

religious beliefs, and subjected him to investigation, disciplinary proceedings, and punishment solely on the basis of his religious beliefs.

134.    The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, on its face and as applied, unconstitutionally discriminates on the basis of content.

135.    The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard is not supported by any compelling, legitimate, substantial, or even rational government interest.

136.    The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, on its face and as applied, is not the least restrictive means of achieving an otherwise permissible government interest.

137.    The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, on its face and as applied, is not narrowly tailored to achieve any such legitimate interest, even if it existed.

138.    The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, on its face and as applied, lacks any rational basis and is irrational and unjustifiable.

139.    The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, on its face and as applied, is arbitrary and unconscionable.

140.    The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, on its face and as applied, has caused, is causing, and will continue to cause irreparable harm and actual and undue hardship on Plaintiff's sincerely held religious beliefs.

141.    Plaintiff has no adequate remedy at law to protect the continuing deprivation of his most cherished constitutional liberties and sincerely held religious beliefs.

WHEREFORE, Plaintiff respectfully prays for relief against Defendant as hereinafter set forth in his prayer for relief.

**COUNT II – RETALIATION IN VIOLATION OF THE FREE SPEECH CLAUSE OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION**

142.    Plaintiff hereby realleges and adopts each and every allegation in paragraphs 1–126 above as if fully set forth herein.

143.    The Free Speech Clause of the First Amendment prohibits government retaliation against persons for engaging in constitutionally protected speech, expression, and conduct.

144.    Plaintiff engaged in constitutionally protected conduct by expressing and maintaining his religious beliefs, views, and convictions.

145.    The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, on its face and as applied, is an action that would chill and deter a person of ordinary firmness from exercising his constitutional rights to express or maintain his religious beliefs.

146.    The Commanding Officers of the Idaho Army National Guard investigation, disciplinary proceedings, punishment and removal from command are actions that would chill and deter a person of ordinary firmness from exercising his constitutional rights to express or maintain his religious beliefs.

147.    The investigation, disciplinary proceedings, punishment and removal from command by Commanding Officers of the Idaho Army National Guard are adverse actions that were undertaken solely in retaliation for Plaintiff's exercise and expression of his sincere religious convictions and protected speech.

148.    The investigation, disciplinary proceedings, punishment and removal from command by Commanding Officers of the Idaho Army National Guard were retaliatory actions taken in response to Plaintiff exercising his fundamental rights to religious exercise and speech.

149.    A clear causal link exists between Plaintiff's religious exercise and expression and the retaliatory conduct of the Commanding Officers of the Idaho Army National Guard.

150.    The timing of the investigation, disciplinary proceedings, punishment and removal from command demonstrate that the actions of Commanding Officers of the Idaho Army National Guard were based solely on Plaintiff's religious status, beliefs, and expression.

151.    The actions of the Commanding Officers of the Idaho Army National Guard were undertaken in bad faith and with the intent to punish Plaintiff for his religious status, beliefs, views, and expression, effectively penalizing Plaintiff for engaging in constitutionally protected conduct and expression.

152.    The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, on its face and as applied, is not supported by any compelling, legitimate, substantial, or even rational government interest.

153.    The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, on its face and as applied, is not the least restrictive means of achieving an otherwise permissible government interest.

154.    There is no direct and palpable connection between the "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, on its face and as applied, and punishing and retaliating against Plaintiff for his religious beliefs, views, and expression.

155.    Plaintiff's religious beliefs, views, and expression do not have a clear tendency to undermine good order or discipline.

156.    The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, on its face and as applied, has caused, is causing, and will continue to cause irreparable harm and actual and undue hardship on Plaintiff's sincerely held religious beliefs.

157.    Plaintiff has no adequate remedy at law to protect the continuing deprivation of his most cherished constitutional liberties and sincerely held religious beliefs.

WHEREFORE, Plaintiff respectfully prays for relief against Defendant as hereinafter set forth in his prayer for relief.

## COUNT III - VIOLATION OF THE FREE EXERCISE CLAUSE OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION

158.    Plaintiff hereby realleges and adopts each and every allegation in paragraphs 1–126 above as if fully set forth herein.

159.    The Free Exercise Clause of the First Amendment to the United States Constitution prohibits the government from abridging Plaintiffs' rights to free exercise of religion.

160.    Plaintiff has sincerely held religious beliefs that Scripture is the infallible, inerrant word of the Lord Jesus Christ, and that he is to follow its teachings.

161.    Plaintiff has sincerely held religious beliefs, compelled by Scripture, that "to him that knoweth to do good, and doeth it not, to him it is sin." *James* 4:7 (KJV).

162.    Plaintiff also has sincerely held religious beliefs, compelled by Scripture, that he is to "take no part in the unfruitful works of darkness," but to "expose them." *Ephesians* 5:11 (ESV).

163.    Plaintiff also has sincerely held religious beliefs, compelled by Scripture, that requires him to understand that silence in the face of evil is evil itself. *See Provers* 8:1-8 ("Doth

32

wisdom not cry? And understanding put forth her voice . . . She crieth at the gates, at the entry of the city, at the coming in at the doors. . . . Hear, for I will speak excellent things; and the opening of my lips shall be right things. For my mouth speak truth; and wickedness is an abomination to my lips. All the words of my mouth are in righteousness; there is nothing froward or perverse in them." (KJV)).

164.    Plaintiff also has sincerely held religious beliefs, compelled by Scripture, that he is to "open [his] mouth for the mute, for the rights of all who are destitute" and to "[o]pen [his] mouth" and "judge righteously." *Proverbs* 31:8-9 (ESV).

165.    Plaintiff also has sincerely held religious beliefs, compelled by Scripture, that there is "a time to keep silence, and a time to speak," *Ecclesiastes* 3:7 (ESV), and that the time to speak is when that which he views as wrong is taking place in society.

166.    Plaintiff also has sincerely held religious beliefs that for him to fail to speak out against things he knows are wrong results in the eternal condemnation of his soul. "If you say, 'behold, we did not know this,' does not he who weighs the heart perceive it? Does not he who keeps watch over your soul know it, and will he not repay man according to his work." *Proverbs* 24:12 (ESV).

167.    The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, on its face and as applied, targets Plaintiff's sincerely held religious beliefs for disparate and discriminatory treatment, solely on the basis of their religious nature.

168.    The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, on its face and as applied, impermissibly burdens Plaintiff's sincerely held religious beliefs, compels Plaintiff to either change those beliefs or act in contradiction to

them, and forces Plaintiff to choose between the teachings and requirements of his sincerely held religious beliefs in the commands of Scripture and the government's imposed value system.

169. The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, on its face and as applied, places Plaintiff in an irresolvable conflict between compliance with the Policy and his sincerely held religious beliefs.

170. The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, on its face and as applied, puts substantial pressure on Plaintiff to violate his sincerely held religious beliefs or face loss of his ability to feed his family.

171. The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, on its face and as applied, is neither neutral nor generally applicable.

172. The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, on its face and as applied, specifically targets Plaintiff's religious beliefs for disparate and discriminatory treatment.

173. The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, on its face and as applied, specifically targets religion for disparate and discriminatory treatment.

174. The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, on its face and as applied, creates a system of individualized exemptions for preferred value systems while discriminating against sincerely held religious beliefs.

175. The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, on its face and as applied, constitutes a religious gerrymander by

unconstitutionally orphaning sincerely held religious beliefs while permitting the more favored nonreligious value systems.

176. The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, on its face and as applied, constitutes a substantial burden on Plaintiff's exercise of his sincerely held religious beliefs

177. The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, on its face and as applied, fails to accommodate Plaintiff's sincerely held religious beliefs.

178. The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard is not supported by any compelling, legitimate, substantial, or even rational government interest.

179. The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, on its face and as applied, is not the least restrictive means of achieving an otherwise permissible government interest.

180. The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, on its face and as applied, has caused, is causing, and will continue to cause irreparable harm and actual and undue hardship on Plaintiff's sincerely held religious beliefs.

181. Plaintiff has no adequate remedy at law to protect the continuing deprivation of his most cherished constitutional liberties and sincerely held religious beliefs.

WHEREFORE, Plaintiff respectfully prays for relief against Defendant as hereinafter set forth in his prayer for relief.

35

**COUNT IV - VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION**

182.   Plaintiff hereby realleges and adopts each and every allegation in paragraphs 1–126 above as if fully set forth herein.

183.   The Fourteenth Amendment to the United States Constitution guarantees Plaintiff the right to equal protection under the law.

184.   "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

185.   The Equal Protection Clause prohibits discrimination on the basis of religion.

186.   The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, on its face and as applied, is an unconstitutional abridgment of Plaintiff's right to equal protection under the law, is not neutral, and specifically targets Plaintiff's sincerely held religious beliefs for discriminatory and unequal treatment.

187.   The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, on its face and as applied, is an unconstitutional abridgement of Plaintiff's right to equal protection because it permits Defendants to treat Plaintiff differently from other similarly situated Guardsmen on the basis of Plaintiff's sincerely held religious beliefs.

188.   The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, on its face and as applied, singles out Plaintiff for selective treatment based upon his sincerely held religious beliefs.

36

189. The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, on its face and as applied, is explicitly intended to inhibit and punish the exercise of Plaintiff's sincerely held religious beliefs.

190. The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, on its face and as applied, creates a system of classes and categories that permit the government to exclude Guardsmen with sincerely held religious beliefs, such as Plaintiff, from rising to command level or remaining there.

191. The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, on its face and as applied, by categorically excluding religious Guardsmen from command, has created and singled out a specific class of people as compared to similarly situated Guardsmen with no religious convictions.

192. The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, on its face and as applied, is a "status-based enactment divorced from any factual context" and "a classification of persons undertaken for its own sake," which "the Equal Protection Clause does not permit." *Romer v. Evans*, 517 U.S. 620, 635 (1996).

193. The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, on its face and as applied, "identifies persons by a single trait [religious beliefs] and then denies them protections across the board." *Id.* at 633.

194. The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, on its face and as applied, results in a "disqualification of a class of persons from the right to seek specific protection [for their religious beliefs]." *Id.*

195. The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, on its face and as applied, "declar[es] that in general it shall be more

37

difficult for one group of citizens than for all others to seek [certain status] from the government is itself a denial of equal protection of the laws in the most literal sense." *Id.*

196.    The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, on its face and as applied, discriminates between religion and nonreligion by allowing certain, nonreligious Guardsmen the ability to attain promotion and ranking while categorically excluding similarly situated Guardsmen from the same treatment, and does so solely on the basis of religious belief.

197.    The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, on its face and as applied, "raises the inevitable inference that the disadvantage imposed is born of animosity toward the class of persons affected," *id.* at 634, and thus violates the Equal Protection Clause.

198.    The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, on its face and as applied, is not supported by any compelling, legitimate, substantial, or even rational government interest.

199.    The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, on its face and as applied, is not the least restrictive means of achieving an otherwise permissible government interest.

200.    The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, on its face and as applied, has caused, is causing, and will continue to cause irreparable harm and actual and undue hardship on Plaintiff's sincerely held religious beliefs.

201.    Plaintiff has no adequate remedy at law to protect the continuing deprivation of his most cherished constitutional liberties and sincerely held religious beliefs

WHEREFORE, Plaintiff respectfully prays for relief against Defendant as hereinafter set forth in his prayer for relief.

## COUNT V - VIOLATION OF THE FEDERAL RELIGIOUS FREEDOM RESTORATION ACT, 42 U.S.C. 2000bb-1

202.   Plaintiff hereby realleges and adopts each and every allegation in paragraphs 1–126 above as if fully set forth herein

203.   RFRA, 42 U.S.C. 2000bb to 2000bb-4, provides that "Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability. 42 U.S.C. 2000bb-1(a).

204.   RFRA also demands that, should the government substantially burden a person's free exercise of religion, it bears the burden of demonstrating that its burden on religious exercise furthers a compelling government interest and is the least restrictive means of achieving that compelling government interest. 42 U.S.C. 2000bb-1(b).

205.   RFRA plainly applies to the United States and its officials in the Department of War, as that constitutes a "branch, department, agency, instrumentality, and official of the United States." 42 U.S.C. 2000bb-2(1). Further, if the Court finds that the Defendant Adjutants General were acting under federal orders, then RFRA will also apply to them in the same manner. *Id.*

206.   Congress enacted RFRA "to provide **very broad** protection for religious liberty," going "far beyond what [the Supreme Court] has held is constitutionally required" under the First Amendment. *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 693, 706 (2014) (emphasis added).

207.   As such, RFRA encompasses a very broad definition of "exercise of religion," which includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *Hobby Lobby*, 573 U.S. at 696 (quoting 42 U.S.C. 2000bb-5(7)(A)).

39

208.   Congress has mandated that RFRA "be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution." *Hobby Lobby*, 573 U.S. at 696 (quoting 42 U.S.C. 2000cc-3(g)).

209.   "RFRA operates as a kind of super statute, displacing the normal operation of other federal laws." *Bostock v. Clayton Cnty., Ga.*, 140 S. Ct. 1731, 1754 (2020).

210.   Plaintiff has sincerely held religious beliefs that Scripture is the infallible, inerrant word of the Lord Jesus Christ, and that he is to follow its teachings.

211.   Plaintiff has sincerely held religious beliefs, compelled by Scripture, that "to him that knoweth to do good, and doeth it not, to him it is sin." *James* 4:7 (KJV).

212.   Plaintiff also has sincerely held religious beliefs, compelled by Scripture, that he is to "take no part in the unfruitful works of darkness," but to "expose them." *Ephesians* 5:11 (ESV).

213.   Plaintiff also has sincerely held religious beliefs, compelled by Scripture, that requires him to understand that silence in the face of evil is evil itself. *See Proverbs* 8:1-8 ("Doth wisdom not cry? And understanding put forth her voice . . . She crieth at the gates, at the entry of the city, at the coming in at the doors. . . . Hear, for I will speak excellent things; and the opening of my lips shall be right things. For my mouth speak truth; and wickedness is an abomination to my lips. All the words of my mouth are in righteousness; there is nothing froward or perverse in them." (KJV)).

214.   Plaintiff also has sincerely held religious beliefs, compelled by Scripture, that he is to "open [his] mouth for the mute, for the rights of all who are destitute" and to "[o]pen [his] mouth" and "judge righteously." *Proverbs* 31:8-9 (ESV).

40

215. Plaintiff also has sincerely held religious beliefs, compelled by Scripture, that there is "a time to keep silence, and a time to speak," *Ecclesiastes* 3:7 (ESV), and that the time to speak is when that which he views as wrong is taking place in society.

216. Plaintiff also has sincerely held religious beliefs that for him to fail to speak out against things he knows are wrong results in the eternal condemnation of his soul. "If you say, 'behold, we did not know this,' does not he who weighs the heart perceive it? Does not he who keeps watch over your soul know it, and will he not repay man according to his work." *Proverbs* 24:12 (ESV).

217. The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, on its face and as applied, impermissibly burdens Plaintiff's sincerely held religious beliefs, compels Plaintiff to either change those beliefs or act in contradiction to them, and forces Plaintiff to choose between the teachings and requirements of his sincerely held religious beliefs in the commands of Scripture and the government's imposed value system.

218. The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, on its face and as applied, places Plaintiff in an irresolvable conflict between compliance with the Policy and his sincerely held religious beliefs.

219. The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, on its face and as applied, puts substantial pressure on Plaintiff to violate his sincerely held religious beliefs or face loss of his ability to feed his family.

220. The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, on its face and as applied, specifically targets Plaintiff's religious beliefs for disparate and discriminatory treatment.

41

221.    The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, on its face and as applied, creates a system of individualized exemptions for preferred value systems while discriminating against sincerely held religious beliefs.

222.    The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, on its face and as applied, constitutes a substantial burden on Plaintiff's exercise of his sincerely held religious beliefs

223.    The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, on its face and as applied, constitutes a substantial burden on Plaintiff's exercise of his sincerely held religious beliefs because it forces soldiers to make the unconscionable choice between violating their sincerely held religious convictions or facing discharge and termination.

224.    The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, on its face and as applied, fails to accommodate Plaintiff's sincerely held religious beliefs.

225.    The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard is not supported by any compelling, legitimate, substantial, or even rational government interest.

226.    The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, on its face and as applied, is not the least restrictive means of achieving an otherwise permissible government interest.

227.    The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, on its face and as applied, has caused, is causing, and will continue

42

to cause irreparable harm and actual and undue hardship on Plaintiff's sincerely held religious beliefs.

228.    Plaintiff has no adequate remedy at law to protect the continuing deprivation of his most cherished constitutional liberties and sincerely held religious beliefs.

WHEREFORE, Plaintiff respectfully prays for relief against Defendants as hereinafter set forth in his prayer for relief.

### COUNT VI - VIOLATION OF THE IDAHO FREE EXERCISE OF RELIGION PROTECTION ACT, Idaho Code §73-402, *et seq.*

229.    Plaintiff hereby realleges and adopts each and every allegation in paragraphs 1–126 above as if fully set forth herein

230.    Idaho's Free Exercise of Religion Protection Act ("FERPA") provides that "Free exercise of religion is a fundamental right that applies in this state, even if laws, rules or other government actions are facially neutral." Idaho Code §73-402(1).

231.    FERPA also provides that "government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability." Idaho Code §73-402(2).

232.    FERPA further provides that the government may only substantially burden religious exercise if "it demonstrates that application of the burden to the person is both: (a) Essential to further a compelling governmental interest; (b) The least restrictive means of furthering that compelling governmental interest." Idaho Code §73-402(3).

233.    Similar to its federal counterpart, the Religious Freedom Restoration Act, 42 U.S.C. §§ 2000bb to 2000bb-4, FERPA is designed to "to provide very broad protection for religious liberty," going "far beyond what [the Supreme Court] has held is constitutionally required" under the First Amendment. *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 693, 706 (2014).

43

234. And, as the Ninth Circuit has recognized, FERPA goes even farther in its protection of religious beliefs than does its federal counterpart. "FERPA's definition of a substantial burden is much broader than RFRA's," *Does v. Wasden*, 982 F>3d 784, 794 (9th Cir. 2020), and thus provides even greater protection than that of RFRA.

235. "RFRA operates as a kind of super statute, displacing the normal operation of other federal laws." *Bostock v. Clayton Cnty.*, 590 U.S. 644, 682 (2020). So, FERPA's greater protection operates with even greater super statutory protections of religious beliefs.

236. Plaintiff has sincerely held religious beliefs that Scripture is the infallible, inerrant word of the Lord Jesus Christ, and that he is to follow its teachings.

237. Plaintiff has sincerely held religious beliefs, compelled by Scripture, that "to him that knoweth to do good, and doeth it not, to him it is sin." *James* 4:7 (KJV).

238. Plaintiff also has sincerely held religious beliefs, compelled by Scripture, that he is to "take no part in the unfruitful works of darkness," but to "expose them." *Ephesians* 5:11 (ESV).

239. Plaintiff also has sincerely held religious beliefs, compelled by Scripture, that requires him to understand that silence in the face of evil is evil itself. *See Proverbs* 8:1-8 ("Doth wisdom not cry? And understanding put forth her voice . . . She crieth at the gates, at the entry of the city, at the coming in at the doors. . . . Hear, for I will speak excellent things; and the opening of my lips shall be right things. For my mouth speak truth; and wickedness is an abomination to my lips. All the words of my mouth are in righteousness; there is nothing froward or perverse in them." (KJV)).

240. Plaintiff also has sincerely held religious beliefs, compelled by Scripture, that he is to "open [his] mouth for the mute, for the rights of all who are destitute" and to "[o]pen [his] mouth" and "judge righteously." *Proverbs* 31:8-9 (ESV).

44

241.    Plaintiff also has sincerely held religious beliefs, compelled by Scripture, that there is "a time to keep silence, and a time to speak," *Ecclesiastes* 3:7 (ESV), and that the time to speak is when that which he views as wrong is taking place in society.

242.    Plaintiff also has sincerely held religious beliefs that for him to fail to speak out against things he knows are wrong results in the eternal condemnation of his soul. "If you say, 'behold, we did not know this,' does not he who weighs the heart perceive it? Does not he who keeps watch over your soul know it, and will he not repay man according to his work." *Proverbs* 24:12 (ESV).

243.    The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, on its face and as applied, targets Plaintiff's sincerely held religious beliefs for disparate and discriminatory treatment, solely on the basis of their religious nature.

244.    The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, on its face and as applied, impermissibly burdens Plaintiff's sincerely held religious beliefs, compels Plaintiff to either change those beliefs or act in contradiction to them, and forces Plaintiff to choose between the teachings and requirements of his sincerely held religious beliefs in the commands of Scripture and the government's imposed value system.

245.    The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, on its face and as applied, places Plaintiff in an irresolvable conflict between compliance with the Policy and his sincerely held religious beliefs.

246.    The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, on its face and as applied, puts substantial pressure on Plaintiff to violate his sincerely held religious beliefs or face loss of his ability to feed his family.

247. The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, on its face and as applied, is neither neutral nor generally applicable.

248. The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, on its face and as applied, specifically targets Plaintiff's religious beliefs for disparate and discriminatory treatment.

249. The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, on its face and as applied, specifically targets religion for disparate and discriminatory treatment.

250. The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, on its face and as applied, creates a system of individualized exemptions for preferred value systems while discriminating against requests sincerely held religious beliefs.

251. The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, on its face and as applied, constitutes a religious gerrymander by unconstitutionally orphaning sincerely held religious beliefs while permitting the more favored nonreligious value systems.

252. The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, on its face and as applied, constitutes a substantial burden on Plaintiff's exercise of his sincerely held religious beliefs

253. The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, on its face and as applied, fails to accommodate Plaintiff's sincerely held religious beliefs.

254.    The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard is not supported by any compelling, legitimate, substantial, or even rational government interest.

255.    The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, on its face and as applied, is not the least restrictive means of achieving an otherwise permissible government interest.

256.    The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, on its face and as applied, has caused, is causing, and will continue to cause irreparable harm and actual and undue hardship on Plaintiff's sincerely held religious beliefs.

257.    Plaintiff has no adequate remedy at law to protect the continuing deprivation of his most cherished constitutional liberties and sincerely held religious beliefs.

WHEREFORE, Plaintiff respectfully prays for relief against Defendant as hereinafter set forth in his prayer for relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

A.    That the Court issue a Preliminary Injunction pending trial, and a Permanent Injunction upon judgment, restraining and enjoining Defendants and their officers, agents, employees, and attorneys, and all other persons in active concert or participation with them, from enforcing, threatening to enforce, attempting to enforce, or otherwise requiring compliance with the "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, to wit:

(1)    Defendant will order its subordinate officers to, including the Commanding Officers of the Idaho Army National Guard to immediately cease any and all investigations, disciplinary proceedings, administrative proceedings, or any other form of retaliatory punishment for Plaintiff's exercise of his constitutionally and statutorily protected rights to private speech and religious exercise;

(2)    Defendant will order its subordinate officers to, including the Commanding Officers of the Idaho Army National Guard to immediately cease any and all efforts to administratively separate Plaintiff from the Idaho Army National Guard or to curtail his active-duty status;

(3)    Defendant will order its subordinate officers to, including the Commanding Officers of the Idaho Army National Guard to immediately restore Plaintiff to the status quo ante, that is—to his prior position before the EO Complaint, institution of the retaliatory administrative investigation, disciplinary procedures, and administrative separation orders; and

(4)    Defendant will order its subordinate officers to, including the Commanding Officers of the Idaho Army National Guard to immediately cease enforcement or application of the "No Christians in Command" Policy, or any derivation thereof; and

(5)    Defendant will order its subordinate officers, including the Commanding Officers of the Idaho Army National Guard, to immediately rescind and revoked the "No Christians in Command" Policy adopted by the Commanding Officers of the Idaho Army National Guard; and

(6)     Defendant will order its subordinate officers, including the Commanding Officers of the Idaho Army National Guard to immediately cease ostracizing Plaintiff from duty assignments, command post, or the promotion to which the United States Department of the Army has recommended him for as of September 2025;

B.      That the Court render a declaratory judgment declaring that the "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, both on its face and as applied by Defendant and the Commanding Officers of the Idaho Army National Guard, is illegal and unlawful in that it purports to remove federal civil rights and constitutional protections from Idaho Army National Guardsmen, and further declaring—

(1)     The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, both on its face and as applied, violates the First Amendment to the United States Constitution by specifically targeting Plaintiff's sincerely held religious beliefs for disparate and discriminatory treatment;

(2)     The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, both on its face and as applied, violates the First Amendment to the United States Constitution by singling out Plaintiff's religious viewpoint and expression for discriminatory treatment;

(3)     The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, both on its face and as applied, violates the First Amendment to the United States Constitution by permitting Defendants to engage in unlawful retaliation against religious adherents and

49

that Defendants' investigations, disciplinary proceedings, administrative proceedings, and punishment were unconstitutionally retaliatory against Plaintiff solely on the basis of his religious exercise and speech;

(4)    The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, both on its face and as applied, without sufficient provision for exemption or accommodation for sincerely held religious beliefs, violates the Federal Religious Freedom Restoration Act by imposing a substantial burden on Plaintiff's sincerely held religious beliefs that is neither supported by a compelling government interest nor the least restrictive means of achieving ; and

(5)    The "No Christians in Command" Policy adopted by Commanding Officers of the Idaho Army National Guard, both on its face and as applied, violates the Idaho Free Exercise of Religion Protection Act by imposing a substantial burden on Plaintiff's sincerely held religious beliefs without any compelling interest;

C.    That the Court adjudge, decree, and declare the rights and other legal obligations and relations within the subject matter here in controversy so that such declaration shall have the full force and effect of final judgment;

D.    That the Court award Plaintiffs actual damages in an amount to be determined at trial;

E.    That the Court award Plaintiff his reasonable attorney's fees, costs, and other expenses and disbursements in this action 42 U.S.C. § 1988, and as otherwise allowed by law;

50

F.      That the Court retain jurisdiction over the matter for the purposes of enforcing the

Court's order; and

G.      That the Court grant such other and further relief as the Court deems equitable and

just under the circumstances.

H.      Plaintiff hereby prays for a trial by jury on all issues so triable.

Respectfully submitted,

/s/ Stephen F. Smith                         /s/ Daniel J. Schmid
Stephen F. Smith                             Mathew D. Staver
steve@smithmcowenlaw.com                     Florida 0701092
Idaho Bar 2165                               court@lc.org
Smith & McOwen, Attorneys at Law             Horatio G. Mihet
102 Superior Street                          Florida 026581
Sandpoint, ID 83864                          hmihet@lc.org
Phone: (208) 263-3115                        Daniel J. Schmid
                                             Virginia 84415
                                             dschmid@lc.org
                                             Richard L. Mast
                                             Virginia 80660
                                             rmast@lc.org
                                             LIBERTY COUNSEL
                                             P.O. Box 540774
                                             Orlando, FL 32854
                                             Phone: (407) 875-1776
                                             Facsimile: (407) 875-0770
                                             *Attorneys for Plaintiff*

51

**VERIFICATION OF COMPLAINT**

I, Major David T. Worley, am over the age of eighteen years and the Plaintiff in this action. Pursuant to 28 U.S.C. § 1746, I verify and declare under penalty of perjury that the foregoing allegations that pertain to me are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently.

Executed this 4th day of March, 2026

/s/ David T. Worley
David T. Worley

52